409 So.2d 377 (1982)
Scott SINGLETON
v.
GULF COAST TRUCK SERVICE, INC., et al.
No. 12221.
Court of Appeal of Louisiana, Fourth Circuit.
January 12, 1982.
Melvin Ripp, Jr., New Orleans, for plaintiff-appellee.
Lemle, Kelleher, Kohlmeyer & Matthews, Michael J. Furman, New Orleans, for defendants-appellants.
Before REDMANN, GULOTTA and BARRY, JJ.
GULOTTA, Judge.
In this suit, under LSA-R.S. 23:631(A) and LSA-R.S. 23:632,[1] Gulf Coast Truck *378 Service, Inc. and Rolie Harris were cast in judgment in solido for $1,216.94 in unpaid wages, less a credit of $269.26; and Gulf Coast was cast for $2,500.00 in attorney's fees. Penalty wages were disallowed.
Rolie Harris has not appealed. Gulf Coast, appealing, claims that Scott Singleton was employed as a truck driver by Harris and not by Gulf Coast, and that it was Harris' responsibility to hire, fire, supervise, manage and pay plaintiff in accordance with the contract entered into between Gulf Coast and Harris. Gulf Coast further claims that, if indeed, plaintiff was an employee of Gulf Coast, he was not employed by the hour, day, week or month and, therefore, not entitled to the benefit of LSA-R.S. 23:631 and 632. Finally, Gulf Coast claims the trial judge erred when he dismissed its third party demand against Harris for reimbursement of advances made to Harris.
Gulf Coast, an interstate freight carrier, leased a tractor from Rolie Harris to be used in transporting its loaded trailer. According to the terms of the agreement, Harris was to receive a minimum of 62% of the gross revenue derived by Gulf Coast from the use of the truck. The lease further provided that Harris, among other things, would retain responsibility for hiring, setting the wages, hours and working conditions, as well as supervising, training, disciplining and firing all drivers. The drivers and workers were to remain the employees of Harris, according to the lease terms.
Despite the recitations in the lease, the evidence supports the apparent factual conclusions reached by the trial judge that plaintiff was employed by both defendants; was supervised, managed and controlled by Gulf Coast; and was to be paid 20% of the amount received from the operation of the truck.
Plaintiff testified that he had contacted Harris regarding employment as a truck driver. Arrangements were later made by Harris with plaintiff to meet with Gulf Coast personnel in Houma, Louisiana. At this meeting between plaintiff and Mark Geisinger, operations manager for Gulf Coast, plaintiff was told that he would receive 20% of the revenue derived from the load carried by him. Plaintiff testified that Gulf Coast employees provided him with an employment application, a certificate that he had passed an I.C.C. examination and a medical card. According to Singleton, discussions were had with Geisinger concerning pay and not with Harris.
Plaintiff was taken to the Gulf Coast-Shreveport office where he commenced his truck driving employment on October 10, 1977. While driving his route and on arrival at his destination, Singleton received instructions and advances for expenses from Gulf Coast. Singleton worked for a period of two months during October, November and December driving the tractor trailer on interstate routes. Exhibits included in the record show purchases for fuel are in the name of Gulf Coast.
*379 Plaintiff testified further he received his instructions from Gulf Coast and was supervised and controlled in his operations by Gulf Coast. However, on one occasion when the truck broke down, he contacted Harris and was picked up by Harris from the disabled truck. On this occasion and subsequently, Singleton talked with Harris about getting his unpaid wages and Harris informed him that he would talk to Gulf Coast. Plaintiff stated further that on several occasions in December and in January, he had tried unsuccessfully to obtain his back pay from Gulf Coast and Harris. Harris, on the other hand, testified that the $269.00 was paid to plaintiff by Harris' wife on one occasion when Singleton sought his pay. Finally, Singleton testified he was under the impression that he had been employed by Gulf Coast and that the tractor trailer driven by him was the property of Gulf Coast and not Harris.
Harris stated that he was the owner of the tractor trailer leased to Gulf Coast and that Singleton was to be paid monthly based on the gross revenue derived from the operation of the truck. Harris stated that he had refused plaintiff's several requests for pay since he had not received payment from Gulf Coast. According to Harris, other than the conversations about the unpaid wages, he had no conversation with Singleton prior to employment regarding pay. Harris further testified that Singleton was supervised and managed by Gulf Coast and that the $269.00 payment made by him to Singleton represented 20% of the funds received by him from Gulf Coast. Singleton denied that he received any amount from Harris.
In deposition, Doug Brannan, the sole stockholder and president of Gulf Coast Truck Service, Inc., stated that Gulf Coast had leased the truck from Harris, who was responsible for payment of the driver's wages. Brannan stated that payment to the truck owner is calculated from freight bills and paper work presented to Gulf Coast, and that delays in receiving paper work from Singleton had caused the delay in payment to Harris. According to Brannan, however, Harris was not only paid in full, but overpayments were made and repairs to Harris' truck paid by Gulf Coast had not been reimbursed. Brannan testified that Harris presented Singleton to Gulf Coast as his driver and that no arrangements were made by Gulf Coast with Harris for the amount of wages to be paid. Finally, Brannan stated that Singleton was not an employee of Gulf Coast but of Harris.
Having considered the evidence, we cannot conclude the trial judge erred when he apparently determined that Singleton was a Gulf Coast employee as well as a Harris employee. Accordingly, we find no error in the judgment against Gulf Coast for the unpaid wages.
We reject Gulf Coast's claim that because arrangements were made by Harris to plaintiff for payment on a percentage of the gross revenue derived from the operation of the truck, LSA-R.S. 23:631-632 do not apply. Although Gulf Coast argues that the statutes apply only to employees paid "by the hour, day, week or month," the Louisiana Supreme Court has construed this statutory phrase as descriptive of the "pay period, rather than the method of calculating wages." See Mason v. Norton, 360 So.2d 178 (La.1978). Harris testified that plaintiff was to be paid monthly a percentage of the revenue the truck produced. Under the circumstances, we conclude plaintiff's employment was "by the ... month" and he is covered by the statute.
We further find no error in the attorney's fees award in conformity with LSA-R.S. 23:632. This statute provides that reasonable attorney's fees shall be allowed "... in the event a well-founded suit for any unpaid wages whatsoever, be filed by the laborer or employee after three days shall have elapsed from time of making the first demand..." Because plaintiff has established entitlement to unpaid wages and because the evidence clearly established that repeated demands for payment were made to Gulf Coast and Harris by Singleton, the trial judge properly awarded attorney's fees. We consider the $2,500.00 fee a *380 reasonable amount for the trial and appeal. We decline to award additional attorney's fees.[2]
We find merit, however, to plaintiff's contention that he is entitled to penalty wages. LSA-R.S. 23:632 provides that any employer who fails or refuses to comply with the provisions of R.S. 23:631 "shall be liable ... either for ninety days wages.... or else for full wages from the time the .... demand for payment is made until the employer shall pay or tender the amount of unpaid wages ... whichever is the lesser amount."
This penal provision must be strictly construed and is not applicable where there is "equitable defense" such as a bona fide dispute concerning whether wages are due the employee. Sifers v. Exxon Corp., 338 So.2d 763 (La.App. 4th Cir. 1976); Otwell v. Howard Lumber & Supply Company, Inc., 283 So.2d 826 (La.App. 2nd Cir. 1973). Thus, no penalty is imposed where the particular facts "strongly indicate that greater justice will be attained" by refusing the penalty. See Otwell v. Howard Lumber & Supply Company, Inc., supra. Nevertheless, the statute does not permit the employer's desires, conveniences or procedures to condition the payment of wages. Duhon v. Prof Erny's Music Company, Inc., 328 So.2d 788 (La.App. 3rd Cir. 1976).
In our case, plaintiff made repeated demands for his pay on both Gulf Coast and Harris, to no avail. He further testified that he submitted freight bills for his wages at the New Orleans office of Gulf Coast, but did not receive wages for his services during the two month period from mid-October to mid-December. He stated that Gulf Coast's agent, Geisinger, told him that the company was having "paper work problems" and that he would receive something in the mail "next week". Despite appellant's reliance on its contract with Harris to the effect that Harris was responsible for paying plaintiff his wages, we conclude there was no justification for Gulf Coast's failure to pay plaintiff's wages promptly on demand. Under the circumstances, we conclude the trial court erred in failing to award penalty wages in the amount of $1,825.41.[3]
Accordingly, that part of the judgment in favor of plaintiff for unpaid wages and attorney's fees is affirmed. It is further ordered that penalty wages be awarded in favor of Scott Singleton and against Gulf Coast Truck Service, Inc. in the amount of $1,825.41, together with legal interest from date of judicial demand until paid. Costs to be paid by Gulf Coast Truck Service, Inc. As amended, the judgment is affirmed.
AMENDED AND AFFIRMED.
NOTES
[1] LSA-R.S. 23:631(A) and LSA-R.S. 23:632 read as follows:

"§ 631. Discharge or resignation of employees; payment within three days after termination of employment.
A. Upon the discharge or resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, not later than three days following the date of discharge or resignation. Said payment shall be made at the place and in the manner which has been customary during the employment, except that payment may be made via United States mail to the laborer or other employee, provided postage has been prepaid and the envelope properly addressed with the employee's or laborer's current address as shown in the employer's records. In the event payment is made by mail the employer shall be deemed to have made such payment when it is mailed. The timeliness of the mailing may be shown by an official United States postmark or other official documentation from the United States Postal Service.
..."
"632. Liability of employer for failure to pay; attorneys' fees
Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation."
[2] In answer to the appeal, plaintiff seeks increased attorney's fees, penalty wages and damages for frivolous appeal. Because we conclude the issues raised in the appeal are serious, we decline to award damages for frivolous appeal. See LSA-C.C.P. Art. 2164; Parker v. Interstate Life & Accident Insurance Co., 248 La. 449, 179 So.2d 634 (La. 1965).
[3] Plaintiff testified that the total revenue generated by his trips from mid-October to mid-December, 1977 was $6,084.72. Because he was entitled to 20% of the gross revenue, the trial court awarded $1,216.94 as unpaid wages, less a credit of $269.26. This $1,216.94 figure represents two months work at the rate of $608.47 per month. Under LSA-R.S. 23:632 plaintiff would be entitled to penalty wages in the amount of "ninety days wages at the employee's daily rate of pay." We conclude, therefore, that plaintiff is entitled to a penalty of three months pay at $608.47 per month for a total of $1,825.41.